

*State of Florida*
# Florida Commission on Human Relations
*An Equal Opportunity Employer • Affirmative Action Employer*
4075 Esplanade Way • Room 110 • Tallahassee, Florida 32399-7020
(850) 488-7082 / FAX: (850) 487-1007
http://fchr.state.fl.us
*United in One Goal: Equal Opportunity and Mutual Respect*



**Ron DeSantis**
*Governor*

**Angela Primiano**
*Chair*
**Cheyanne Costilla**
*Executive Director*

**FCHR No.: 202336801**
**HUD No.:    04-23-4035-8**

Gerald Hamilton                                          **COMPLAINANTS**
Elizabeth Hamilton

v.

MEB Real Estate Management, Inc.            **RESPONDENTS**
Salt Springs Village, LLC
Roger St. Martin
Carol St. Martin

## DETERMINATION (CAUSE)

### I. Jurisdiction

A complaint was filed with the Florida Commission on Human Relations on July 7, 2022, alleging that the Complainants were injured by a discriminatory act. It is alleged that the Respondents were responsible for Discriminatory refusal to rent; Otherwise deny or make housing unavailable and Discriminatory terms, conditions, privileges, or services and facilities. It is alleged that the Respondents' acts were based on Race. The most recent act is alleged to have occurred on August 08, 2021. The property is a lot at "Salt Springs Village," located at 25271 NE 137th Place Lot C15 Salt Springs, FL 32134, which is owned by Respondent Salt Springs Village, LLC and managed by Respondent MEB Real Estate Management, Inc. The Complainants identified Respondents Roger St. Martin and Carol St. Martin as the Sales Agents. The property in question is not exempt under the applicable statutes. If proven, the allegations would constitute a violation of Sections 804(a) and 804(b) of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988. Additionally, if proven, the allegations would constitute a violation of the Florida Fair Housing Act—specifically, Sections 760.23(1) and 760.23(2), Florida Statutes.

The Respondents receive no federal funding.

The last date of harm was August 8, 2021. An inquiry was filed with HUD on July 7, 2022.  Rule 60Y-7.001(6), F.A.C., allows for the amendment of a complaint to cure technical defects, or omissions, including

**COMMISSIONERS**

| | | | |
|---|---|---|---|
| **Angela Primiano** *(Chair)* | **Larry Hart** *(Vice Chair)* | **Brian Battaglia** | **Dawn Hanson** |
| *Hollywood* | *Fort Myers* | *Tampa* | *Tallahassee* |
| | | | |
| **Darrick D. McGhee Sr.** | **Matthew Klein** | **Kenyetta Mullins Moyé** | **Jay Pichard** |
| *Tallahassee* | *Orlando* | *Tallahassee* | *Tallahassee* |
| | | | |
| | **Pamela Payne** | | |
| | *Jacksonville* | | |

verification, which relate back to the date the complaint was first received. The amended complaint received on December 09, 2022, related back to July 7, 2022 and was timely filed.

## II. Allegations by Complainants

In the complaint, Complainants alleged the following:

Complainants Elizabeth and Gerald Hamilton identified themselves as persons of the Black/African American race. Therefore, the Complainants belong to a class of persons whom the Fair Housing Act ("the Act") protects from unlawful discrimination by virtue of race. The Complainants attempted to rent a lot at "Salt Springs Village," located at 25271 NE 137th Place Lot C15 Salt Springs, FL 32134, which is owned by Respondent Salt Springs Village, LLC and managed by Respondent MEB Real Estate Management, Inc. The Complainants identified Respondent Roger St. Martin and Respondent Carol St. Martin as the Sales Agents.

The Complainants alleged that on or around July 5, 2021, they visited the community to view the lot for rental and filled out an application at the subject property. The Complainants alleged that on July 6, 2021, they returned to the subject property and were greeted by Respondents Carol and Roger St Martin. The Complainants alleged they received a rent disclosure statement that reflected the full intentions of the Respondents to welcome them into the community. The Complainants alleged the statement provided information on lot number, monthly rental fees, and instructions for making payment. However, it was missing information about the credit score. The Complainants alleged on July 27, 2021, Respondent Roger St. Martin informed them that their application was being denied and that an official denial letter would be coming soon. The Complainants alleged that Respondent Roger St. Martin informed them, without clarity, that something was off with their credit score. The Complainants alleged they were confused because their credit score was high enough to qualify. The Complainants alleged that on August 8, 2021, they received the official denied letter dated July 15, 2021, from the Respondent MEB Real Estate Management, Inc. and Respondent Salt Springs Village, LLC, which stated they decided not to enter into a land lease agreement with the Complainant because of information on the consumer report. The Complainants alleged that while visiting the community, the Respondents had pictures of the current tenants posted on the wall, revealing that there were no persons of color living in the community. The Complainants further alleged the community Facebook website additionally proved there were no persons of color in the community. The Complainant believes the Respondents denied them the opportunity to rent the lot at the subject property because of their race. The Complainant further believes that if they were persons of the white race, the Respondents would have approved their rental application as they were qualified.

As such, the Complainants believe the Respondents have subjected them to discriminatory terms and conditions, discriminatory refusal to rent, and otherwise denied or made housing unavailable based on race.

### III. Summary of Defenses by Respondents

Respondents deny all allegations made by the Complainants. Specifically, Respondents assert the following:

Respondents state that Salt Springs Village is a 55+ mobile home community that owns the real property and offers mobile home lots for lease, owned by Salt Springs Village LLC as a Limited Liability Company, and managed by MEB Real Estate Management Inc. Respondents assert that on July 6, 2021, the Complainants applied for residency at Salt Springs Village Mobile Home Community (the "Community"), and met with the Community managers, Roger and Carol St Martin, who provided them with standard information about the Community's rates. Respondent St Martins facilitated the application process by forwarding the Complainants' application to Mark Butler of MEB Real Estate Management Inc. for processing. Respondents clarify that the application did not contain any demographic information about the Complainants' race, and Respondent Butler, who conducted the background check, had no prior knowledge of the Complainants' ethnicity. The decision to deny the application was based solely on the Complainants' financial and rental history. The Community maintains a standard policy requiring a combined credit score of 620 or better for residency approval. The Complainants' combined credit score was 598.5, which fell below this threshold. Additionally, Respondents received an unfavorable review from the Complainants' current landlord, who reported issues with property maintenance and a decision not to renew the Complainants' tenancy. Respondents emphasize that race played no role in the decision to deny the Complainants' application. The denial was strictly due to the credit score and the negative reference from the landlord.

Respondents also address the Complainants' concerns about the lack of diversity in the Community. Respondents assert that currently, there are no African American individuals in the Community, but this is not due to any discrimination, there has only been one other African American who came to look at the Community, did not like the home she viewed, and did not apply for residency. Respondents assert that they deny the allegations of preventing people of color from becoming members and assert that there has just been a low demand for housing in the Community from this class of people.

### IV. Findings and Conclusions

### 760.23(1) Refusal to Sell or Rent/ Otherwise Deny or Make Housing Unavailable

In order to conclude there is reasonable cause to believe a violation of Section 760.23(1), Florida Statutes, has occurred, all of the elements of the case must be met. First, Complainant must belong to a class of persons whom the Florida Fair Housing Act protects from unlawful discrimination. Second, Complainant must have made a bona fide offer to Respondent. Third, Complainant must have been qualified, ready, willing, and able to buy or rent consistent with the terms and conditions of Respondent at the time of the alleged act of discrimination. Fourth, Respondent must have refused to sell or rent to Complainant. Fifth, after Respondent refused to sell or rent to Complainant, Respondent must have sold or rented to a less qualified person from a comparable class of persons.

**Regarding the elements of this case, the investigation revealed the following:**

1. Do Complainants belong to a class of persons whom the Florida Fair Housing Act protects from unlawful discrimination?

Yes. Complainants Elizabeth and Gerald Hamilton identified themselves as persons of the Black/African American race. Therefore, by virtue of race, Complainants belong to a class of persons whom the Fair Housing Act ("the Act") protects from unlawful discrimination.

The investigation determined that Respondents had knowledge of Complainants' protected class through the rental application process. Specifically, Complainants' rental application included their photo identifications, which were part of the application package evaluated by Respondents. The investigation was able to confirm that on July 6, 2021, Complainants also had a personal interaction with Respondents Roger and Carol St. Martin, the Community and Sales Managers, at the Salt Springs Village leasing office.

2. Did Complainants make a bona fide offer to Respondents?

Yes. The investigation established that Complainants made a bona fide offer to Respondents to rent lot C15 located at 25271 NE 137th Place, Salt Springs, FL 32134. Complainants submitted their application on July 13, 2021, accompanied by photocopies of each applicant's photo ID.

3. Were Complainants qualified, ready, willing, and able to rent consistent with the terms and conditions of Respondents at the time of the alleged act of discrimination?

<u>No - Based on Respondents' Written Requirements:</u>

The investigation found that Respondents have the following Salt Springs Village MHP Approval Guidelines:

1) A fully completed application for residency must be submitted to and approved by the management
of the community prior to residency.

2) The management office will obtain a complete credit report. Credit scores must be over 620 or better. All bankruptcies must be discharged, and a copy of the discharge must be supplied.

3) All sources of income must be verified. As a minimum, income must be verified at three (3) times the current monthly rental fee. Co-applicants will be considered as joint income sources for the above. W-2s or tax returns from past two (2) years, and most recent pay stubs and/or bank statements from past six (6) months are accepted.

4) A verification of age must be supplied. The first resident must be age 55 or older, and the second resident must be age 45 or older. In accordance with the Federal Fair Housing Act, we will require one of the following documents for each occupant:

i) Driver's License, State Issued Identification Card, or Passport
ii) Military Identification
iii) Birth Certificate
iv) Any other state, local or national official document containing a birth date of comparable reliability.
v) A certification in a lease, application, affidavit or other document signed by a member of the household age 18 or older asserting that at least one person in the unit is 55 years of age or older.

5) A conviction of a felonious crime or a crime involving dishonest or false statements may be grounds for denial of the application.

6) Acceptable rental history. A previous foreclosure or eviction may be grounds for denial of the applicant.

Respondents maintain a policy requiring a combined credit score of 620 or higher for application approval. According to Complainants' screening report, prepared by the consumer reporting agency, VeriFirst Background Screening, for Respondent MEB Real Estate Management on July 14, 2021, Elizabeth Hamilton had a credit score of 641, while Gerald Hamilton had a credit score of 556, the combined credit score was 598.5. As such, Complainants' combined credit score of 598.5 was insufficient to meet Respondents' rental requirements.

The investigation revealed that Respondents also denied Complainants' application due to an unfavorable review from Complainants' landlord. The email dated July 14, 2021, from Barbara Hemingway, Star Agent, Licensed Realtor, LCAM, to Salt Springs Village and Mark Butler informs,

 "This application has been declined. Mr. Hamilton does not meet our minimum requirements, and their current landlord has terminated their tenancy. He didn't give me a reason, nor according to him did he give one to them. He had to increase the rent by $50.00 about 6 months ago to cover him taking care of the lawn because it was not being taken care of to his liking. He stated that he would not re-rent to them".

Thus, Respondents considered Complainants unqualified based on Respondents' requirements regarding credit scores and rental history.

<u>Yes - Based on Respondents' Practices</u>

Although Complainants' application was denied, the analysis of the obtained records revealed that, in practice, Respondents did not consistently apply the same requirements to other applicants. The investigation found that Respondents inconsistently applied their credit score requirement. Complainants were denied primarily due to an insufficient combined credit score of 598.5, which was below the 620 threshold. However, the documentation showed that there was another Caucasian applicant who was approved in April 2021 despite having a lower credit score of 592 compared to Complainants.

Moreover, the investigation revealed that Respondents used different credit reporting agencies for different applicants: while the majority of applicants were screened by <u>VeriFirst Background Screening,</u> some applicants had their credit reports prepared by <u>Experian Credit Report.</u> Respondents failed to provide the rationale for utilizing two different consumer reporting agencies for the screening of their applicants.

According to the Salt Springs Village Mobile Home Park MHP Approval Guidelines, an applicant's rental history must be verified as part of the background screening. Specifically, the guidelines state that an acceptable rental history is required, and a previous foreclosure or eviction may be grounds for denial of the applicant. The investigation revealed that Complainants had no history of eviction or foreclosure, as confirmed by their Screening Report provided by VeriFirst Background Screening, LLC, which indicated no issues with Complainants' rental history. Moreover, although Respondents cited Complainants' negative landlord reference as a reason for their denial, the Approval Guidelines do not list a reference from a current or former landlord as a required criterion for evaluating applicant's eligibility.

Therefore, based on the practical application of Respondents' rental requirements, Complainants were qualified and should have been considered ready and able to rent, just as other applicants, consistent with the terms and conditions of Respondents.

4. Did Respondents refuse to sell or rent to Complainants?

Yes. The investigation confirmed that Respondents refused to rent to Complainants. The investigation found that denial letters dated July 15, 2021, informed Complainants that their application for a land lease agreement at Salt Springs Village had been declined. This decision was influenced by a consumer report obtained during the tenant application process. The letters also advised that the rejection was based entirely or partly on information from a consumer report provided by VeriFirst Background Screening, LLC. The consumer reporting agency did not make the lease decision but provided the report used by MEB Real Estate Management to evaluate the application.

Additionally, the investigation further revealed that Complainants were never informed about the second denial factor as the negative reference from their landlord.

5. After Respondents refused to sell or rent to Complainants, did Respondents sell or rent to a less qualified person from a comparable class of persons?

Yes, the investigation determined that after Respondents refused to rent a lot to Complainants, Respondents rented to a less qualified person from a comparable class of persons. The records obtained for the investigation, twenty-four (24) applications for purchase, indicated that all prospective applicants who applied from February through December 2021 underwent the same application approval process and were subject to the same documentation requirements. However, the investigation determined that the criteria for evaluating applicants have been applied inconsistently.

Complainants were denied due to an insufficient combined credit score of 598.5, which was below

the required threshold of 620. However, the analysis of obtained records showed that Marvin Johnson, a Caucasian applicant, was approved in April 2021 despite having a lower credit score of 592 compared to Complainants. Moreover, the investigation revealed that Respondents used different credit reporting agencies for Marvin Johnson's background check: first, on April 17, 2021, Marvin D. Johnson's screening report was prepared by VeriFirst Background Screening reflecting a FICO score of 592, whereas on April 20, 2021, his subsequent screening by Experian Credit Report reflected a FICO score of 625.

Additionally, the documentation showed that while the majority of applicants were screened by VeriFirst Background Screening, some applicants had their credit reports prepared by Experian Credit Report. Specifically, out of 24 Tenant Screening Reports, 17 reports were provided by VeriFirst Background Screening, and 3 reports were prepared by Experian Credit Report, while the screening details of 4 applicants remain undetermined due to their Tenant Screening Reports were not provided by Respondents. Respondents did not provide the rationale for utilizing two different consumer reporting agencies in the applicant screening process.

The investigation revealed that Respondents also denied Complainants' application due to an unfavorable review from Complainants' landlord, who reported issues with property maintenance and a decision not to renew Complainants' tenancy. Pursuant to the Salt Springs Village Mobile Home Park Approval Guidelines, verification of an applicant's rental history forms part of the background screening process. Specifically, the Approval Guidelines stipulate that an applicant must demonstrate an acceptable rental history, with any record of foreclosure or eviction constituting potential grounds for denial. The investigation found that Complainants possessed no history of eviction or foreclosure. Furthermore, while Respondents cited unfavorable reference from Complainants' landlord as a basis for denial, the Approval Guidelines do not enumerate a reference from a current or former landlord as a required criterion for determining applicant eligibility.

In the email correspondence to the investigation on March 7, 2023, Respondents made the following statement, "We have not denied anyone in 2021 except for the Hamiltons, because their landlord said they refused to maintain the property. They are the only ones who came from a rental situation to buy in here. Everyone else sold a home to come into the park or buying as a second home."

Thus, according to Respondents' statement, Complainants were the only applicants in 2021 whose application involved a rental background rather than homeownership. All other applicants that year were homeowners making landlord references inapplicable as a requirement in their approval process.

In response to the investigation, Respondents provided twenty-four (24) copies of applications. Each application included a copy of a government-issued ID, predominantly a driver's license. The analysis of the records showed that all applicants, except Complainants, were identified as Caucasian. The investigation further established that Complainants were the only applicants denied residency in 2021. Moreover, during an interview on November 11, 2024, one of the current residents of the community, who identified herself as Caucasian, stated that since she moved to the community in 2018, she had not seen any persons or residents of color, specifically African

American or Black individuals, residing in the community.

Although the records obtained for the investigation indicated that all applicants who applied from February through December 2021 underwent the same application approval process and were subject to the same documentation requirements, the investigation determined that the criteria for evaluating applicants have not been applied consistently. Respondent, with knowledge of Complainants' protected class, refused to rent to Complainants and rented to a less qualified person from a comparable class of persons.

Therefore, based on the foregoing, the Commission finds that there is reasonable cause to believe that a discriminatory housing practice occurred in violation of Section 760.23(2), Florida Statutes.

**760.23(2) Sale or Rental – Terms and Conditions**

**In order to conclude there is reasonable cause to believe a violation of Section 760.23(2), Florida Statutes, based on Race, has occurred, all the elements of the case must be met.**

First, the investigation of this case must show that Complainant belongs to a class of persons whom the Florida Fair Housing Act protects from unlawful discrimination because of race, color, national origin, sex, disability, familial status, or religion. Second, Complainant must have attempted to offer to buy or rent, or to continue to occupy the dwelling consistent with the terms and conditions for buying, renting, or continued occupancy that were offered by Respondent. Third, Complainant must have been qualified, ready, willing, and able to buy or rent consistent with the terms and conditions offered by Respondent. Fourth, Respondent, with knowledge of Complainant's protected class, must have willfully failed or refused to offer the same terms and conditions for selling or renting, or continued occupancy to Complainant as were offered to other persons, and Respondent must have offered seemingly more favorable terms and conditions for the purchase, sale, rental, or occupancy of the dwelling to one or more persons from a comparable class of persons.

**Regarding the elements of this case, the investigation revealed the following:**

1. Do Complainants belong to a class of persons whom the Florida Fair Housing Act protects from unlawful discrimination because of race, color, national origin, sex, disability, familial status, or religion?

Yes. Complainants Elizabeth and Gerald Hamilton identified themselves as persons of the Black/African American race. Therefore, by virtue of race, Complainants belong to a class of persons whom the Fair Housing Act ("the Act") protects from unlawful discrimination.

2. Did Complainants attempt to offer to rent the dwelling consistent with the terms and conditions for buying, renting, or continued occupancy that were offered by Respondents?

Yes. The investigation established that Complainants attempted to rent lot C15, located at 25271 NE 137th Place, Salt Springs, FL 32134. Complainants submitted their application on July 13, 2021, accompanied by photocopies of each applicant's photo ID.

3. Were Complainants qualified, ready, willing, and able to rent consistent with the terms and conditions offered by Respondents?

No - Based on Respondents' Written Requirements:

The investigation found that Respondents have the following Salt Springs Village MHP Approval Guidelines:

1) A fully completed application for residency must be submitted to and approved by the management
of the community prior to residency.

2) The management office will obtain a complete credit report. Credit scores must be over 620 or better. All bankruptcies must be discharged, and a copy of the discharge must be supplied.

3) All sources of income must be verified. As a minimum, income must be verified at three (3) times the current monthly rental fee. Co-applicants will be considered as joint income sources for the above. W-2s or tax returns from past two (2) years, and most recent pay stubs and/or bank statements from past six (6) months are accepted.

4) A verification of age must be supplied. The first resident must be age 55 or older, and the second resident must be age 45 or older. In accordance with the Federal Fair Housing Act, we will require one of the following documents for each occupant:
    i) Driver's License, State Issued Identification Card, or Passport
    ii) Military Identification
    iii) Birth Certificate
    iv) Any other state, local or national official document containing a birth date of comparable reliability.
    v) A certification in a lease, application, affidavit or other document signed by a member of the household age 18 or older asserting that at least one person in the unit is 55 years of age or older.

5) A conviction of a felonious crime or a crime involving dishonest or false statements may be grounds for denial of the application.

6) Acceptable rental history. A previous foreclosure or eviction may be grounds for denial of the applicant.

Respondents maintain a policy requiring a combined credit score of 620 or higher for application approval. According to Complainants' screening report, prepared by the consumer reporting agency, VeriFirst Background Screening, for Respondent MEB Real Estate Management on July 14, 2021, Elizabeth Hamilton had a credit score of 641, while Gerald Hamilton had a credit score of 556, the combined credit score was 598.5. As such, Complainants' combined credit score of 598.5 was insufficient to meet Respondents' rental requirements.

The investigation revealed that Respondents also denied Complainants' application due to an

unfavorable review from Complainants' landlord. The email dated July 14, 2021, from Barbara Hemingway, Star Agent, Licensed Realtor, LCAM, to Salt Springs Village and Mark Butler informs,

 "This application has been declined. Mr. Hamilton does not meet our minimum requirements, and their current landlord has terminated their tenancy. He didn't give me a reason, nor according to him did he give one to them. He had to increase the rent by $50.00 about 6 months ago to cover him taking care of the lawn because it was not being taken care of to his liking. He stated that he would not re-rent to them".

Thus, Respondents considered Complainants unqualified based on Respondents' requirements regarding credit scores and rental history.

<u>Yes - Based on Respondents' Practices</u>

Although Complainants' application was denied, the analysis of the obtained records revealed that, in practice, Respondents did not consistently apply the same requirements to other applicants. The investigation found that Respondents inconsistently applied their credit score requirement. Complainants were denied primarily due to an insufficient combined credit score of 598.5, which was below the 620 threshold. However, the documentation showed that there was another Caucasian applicant who was approved in April 2021 despite having a lower credit score of 592 compared to Complainants.

Moreover, the investigation revealed that Respondents used different credit reporting agencies for different applicants: while the majority of applicants were screened by <u>VeriFirst Background Screening,</u> some applicants had their credit reports prepared by <u>Experian Credit Report.</u> Respondents failed to provide the rationale for utilizing two different consumer reporting agencies for the screening of their applicants.

According to the Salt Springs Village Mobile Home Park MHP Approval Guidelines, an applicant's rental history must be verified as part of the background screening. Specifically, the guidelines state that an acceptable rental history is required, and a previous foreclosure or eviction may be grounds for denial of the applicant. The investigation revealed that Complainants had no history of eviction or foreclosure, as confirmed by their Screening Report provided by VeriFirst Background Screening, LLC, which indicated no issues with Complainants' rental history. Moreover, although Respondents cited Complainants' negative landlord reference as a reason for their denial, the Approval Guidelines do not list a reference from a current or former landlord as a required criterion for evaluating applicant's eligibility.

Therefore, based on the practical application of Respondents' rental requirements, Complainants were qualified and should have been considered ready and able to rent, just as other applicants, consistent with the terms and conditions of Respondents.

4. Did Respondents, with knowledge of Complainants' protected class, willfully fail or refuse to offer the same terms and conditions for renting to Complainants as were offered to other persons, and did Respondents offer seemingly more favorable terms and conditions for the rental, or

occupancy of the dwelling to one or more persons from a comparable class of persons?

Yes. The investigation was able to confirm that Respondents, with knowledge of Complainants' protected class, offered seemingly more favorable terms and conditions for rental to one or more persons from a comparable class of persons.

The investigation determined that Respondents had knowledge of Complainants' protected class through the rental application process. Specifically, Complainants' rental application included their photo identification, which was part of the application package evaluated by Respondents. The investigation was able to confirm that on July 6, 2021, Complainants also had a personal interaction with Respondents Roger and Carol St. Martin, the Community and Sales Managers, at the Salt Springs Village leasing office.

The records obtained for the investigation, twenty-three (23) applications for purchase, indicated that all prospective applicants who applied from February through December 2021 underwent the same application approval process and were subject to the same documentation requirements. However, the investigation established that the criteria for evaluating applicants have been applied inconsistently.

Complainants were denied due to an insufficient combined credit score of 598.5, which was below the required threshold of 620. However, the analysis of obtained records showed that Marvin Johnson, a Caucasian applicant, was approved in April 2021 despite having a lower credit score of 592 compared to Complainants. Moreover, the investigation revealed that Respondents used different credit reporting agencies for Marvin Johnson's background check: first, on April 17, 2021, Marvin D. Johnson's screening report was prepared by <u>VeriFirst Background Screening</u> reflecting a FICO score of 592, whereas on April 20, 2021, his subsequent screening by <u>Experian Credit Report</u> reflected a FICO score of 625.

Additionally, the documentation showed that while the majority of applicants were screened by VeriFirst Background Screening, some applicants had their credit reports prepared by Experian Credit Report. Specifically, out of 24 Tenant Screening Reports, 17 reports were provided by VeriFirst Background Screening, and 3 reports were prepared by Experian Credit Report, while the screening details of 4 applicants remain undetermined due to their Tenant Screening Reports were not provided by Respondents. Respondents also failed to provide the rationale for utilizing two different consumer reporting agencies in the applicant screening process.

The investigation revealed that Respondents denied Complainants' application due to an unfavorable review from Complainants' landlord, who reported issues with property maintenance and a decision not to renew Complainants' tenancy. Pursuant to the Salt Springs Village Mobile Home Park Approval Guidelines, verification of an applicant's rental history forms part of the background screening process. Specifically, the guidelines stipulate that an applicant must demonstrate an acceptable rental history, with any record of foreclosure or eviction constituting potential grounds for denial. The investigation found that Complainants possessed no history of eviction or foreclosure. Furthermore, while Respondents cited unfavorable reference from Complainants' landlord as a basis for denial, the Approval Guidelines do not enumerate a reference from a current or former landlord as a required criterion for determining applicant eligibility.

In the email correspondence to the investigation on March 7, 2023, Respondents made the following statement, "We have not denied anyone in 2021 except for the Hamiltons because their landlord said they refused to maintain the property. They are the only ones who came from a rental situation to buy in here. Everyone else sold a home to come into the park or buying as a second home."

Thus, according to Respondents' statement, Complainants were the only applicants in 2021 whose application involved a rental background rather than homeownership. All other applicants that year were homeowners making landlord references inapplicable as a requirement in their approval process.

In response to the investigation, Respondents provided twenty-four (24) copies of applications. Each application included a copy of a government-issued ID, predominantly a driver's license. The analysis of the records showed that all applicants, except Complainants, were identified as Caucasian. The investigation further established that Complainants were the only applicants denied residency in 2021. Moreover, during an interview on November 11, 2024, one of the current residents of the community, who identified herself as Caucasian, stated that since she moved to the community in 2018, she had not seen any persons or residents of color, specifically African American or Black individuals, residing in the community.

Although the records obtained for the investigation indicated that all prospective tenants who applied for approvals from January through July 2023 underwent the same application approval process and were subject to the same documentation requirements, the investigation determined that the criteria for evaluating applicants have not been applied consistently. As such, Respondents, with knowledge of Complainants' protected class, willfully fail or refuse to offer the same terms and conditions for renting to Complainants as were offered to other persons, and Respondents offer seemingly more favorable terms and conditions for the rental, or occupancy of the dwelling to other persons outside of Complainants' protected class.

Therefore, based on the foregoing, the Commission finds that there is reasonable cause to believe that a discriminatory housing practice occurred in violation of Section 760.23(2), Florida Statutes.

## V. Additional Information

Notwithstanding this determination, the Florida Fair Housing Act provides that the Complainant may file a civil action in an appropriate court. According to Section 760.35(1), Florida Statutes, such a civil action shall be commenced no later than two years after an alleged discriminatory housing practice has occurred.

Under the Florida Public Records Act, this determination is a public document. A copy of the final investigative report can be obtained from:

FLORIDA COMMISSION ON HUMAN RELATIONS
4075 ESPLANADE WAY, ROOM 110
TALLAHASSEE, FLORIDA 32399

**FOR THE FLORIDA COMMISSION ON HUMAN RELATIONS**

_____                    Nov. 8, 2024
Cheyanne Costilla, Executive Director                          Date